IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| | * |
| FIDELIS CYBERSECURITY, INC., *et al.*, | |
| | * |
| Plaintiffs, | |
| | * |
| v. | |
| | *            Civil No. 23-2196-BAH |
| PARTNER ONE CAPITAL, INC., *et al.*, | |
| | * |
| Defendants. | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Fidelis Cybersecurity, Inc., ("Fidelis") and Fidelis AcquisitionCo, LLC ("AcquisitionCo" and, collectively, "Plaintiffs") filed this breach of contract suit against Defendants Partner One Capital, Inc. ("Partner One") and Daniel G. Charron, ("Defendants"). ECF 23. Plaintiffs now move for leave to amend their first amended complaint. ECF 47. The Court has reviewed Plaintiffs' motion for leave to amend, ECF 47, Defendants' opposition, ECF 50, and Plaintiffs' reply in support, ECF 51. For the reasons that follow, Plaintiff's motion is GRANTED in part and DENIED in part.

## I.      BACKGROUND

In 2022 and 2023, Plaintiffs and Defendant Partner One engaged in substantial negotiations relating to Partner One's potential purchase of Fidelis, allegedly culminating in a binding agreement for a fifty-million-dollar sale (plus 25% equity). ECF 23, at 2. That sale never happened; instead, Fidelis was sold in a foreclosure sale for less than eighteen million dollars to a "Partner[ ]One-affiliated entity." ECF 47-2, at 12. This failed transaction and ultimate boon for Partner One are at the heart of this case. ECF 23, at 2–10. Plaintiffs have amended their complaint

once as a matter of course, ECF 23, and now seek leave to file a second amended complaint, ECF 47.  Defendants oppose this motion.  ECF 50.

### A.      Factual Background

Plaintiff AcquisitionCo was the sole shareholder of Fidelis at all times relevant to this case. ECF 51, at 6.  Fidelis is a cybersecurity company that, despite having a robust customer base, was not yet profitable in 2022.  ECF 23, at 3.  As a result, Plaintiffs began seeking an acquirer for Fidelis in September 2022.  *Id.*  Plaintiffs reached out to several potential acquirers and had all interested buyers sign a non-disclosure agreement ("NDA") before Fidelis granted them access to confidential information to begin conducting due diligence relating to the potential sale.  *Id.* at 3–4.  The NDA required that the interested buyers not use any of Fidelis' confidential information for any purpose other than preparing for and negotiating a potential sale; delete or otherwise destroy any and all confidential information they had obtained throughout the due diligence process after discussions terminated between the potential buyers and Fidelis; and refrain from "solicit[ing] for employment or employ[ing] any employee" of Fidelis for two years.  *Id.* at 14. Sixty-two potential acquirers signed the NDA and began conducting due diligence on Fidelis as a precursor to a potential offer, including Partner One.  *Id.* at 4.  Much of the communication Partner One made to Plaintiffs came through Partner One's Founder and CEO, Defendant Daniel Charron. *Id.* at 2.

What followed next was a mire of confusion as Plaintiffs and Defendants attempted to negotiate a deal over the next several months.  In December 2022, Partner One submitted an initial non-binding "indication of interest" ("IOI") to Plaintiffs to purchase Fidelis and all its assets for $120 million.  ECF 23, at 4.  In March 2023, after conducting additional due diligence, Partner One reduced its offer to $73.5 million, but added a promise to close quickly on the deal, estimating

that it could close the deal within thirty to forty-five days.  *Id.*  Shortly thereafter, Partner One raised its offer to $85 million.  *Id.*  Only weeks later, though, Partner One lowered its offering price again, this time to $50 million dollars in April 2023.  *Id.*  Plaintiffs were dissatisfied with Partner One's offer of $50 million and did not accept Partner One's April 2023 IOI.  *Id.*

In May 2023, Plaintiffs received an IOI from a competing potential buyer "for an up-front purchase price of $55 million cash, plus tens of millions in potential earnout payments (expected to be $90 million), leading to a total potential consideration of up to $145 million."  ECF 23, at 5. Plaintiffs entered into negotiations with this new potential buyer.  *Id.*  When the new buyer adjusted their offer by reducing the up-front cash payment, however, Plaintiffs were left with "an option, but not an obligation, to terminate negotiations" with the new buyer.  *Id.*

As Plaintiffs were considering the adjusted terms from the new potential buyer, Partner One adjusted its own offer to $50 million for just 75% of Fidelis instead of the original 100% of Fidelis.  ECF 23, at 5.  Plaintiffs agreed to accept Partner One's offer and terminate discussions with other potential buyers on the condition that Partner One make its offer binding and commit to closing the sale by July 14, 2023.  *Id.*  Plaintiffs explained to Partner One that this timeline was necessary due to Fidelis' funding needs.  *Id.*  Partner One agreed to these terms and signed a binding agreement on June 6, 2023, to buy "all of [Fidelis'] assets and 80.1% of its stock . . . for $50 million cash, plus certain additional rights and other benefits."  *Id.*

The agreement signed by Plaintiffs and Partner One specified that its purpose was to "set out the main binding terms and conditions" of the sale and stated that "the price and terms provided in [the agreement] shall be binding."[1]  ECF 1-1 at 2–3.  It stated that the closing of the deal would

---

[1] The agreement also included a termination provision under which Partner One could terminate the agreement "without any recourse being available" to Plaintiffs if Partner One became aware of any material fact or facts which, independently or in conjunction, would be "reasonably expected

"occur as soon as possible . . . but no later than July 14, 2023." *Id.* at 3.  In signing the agreement, "[e]ach party acknowledge[d] to the other that a failure to move forward with the execution of the [agreement would] cause such party significant and material harm and financial distress." *Id.*  The agreement was signed by an agent of Plaintiffs and by Mr. Charron on behalf of Partner One.  *Id.* at 6–7.

After signing the agreement with Partner One on June 6, 2023, Fidelis asked its lender for an abatement on a principal payment due on June 15, 2023, due to Fidelis' "urgent funding needs." ECF 23, at 6.  Fidelis planned to use the proceeds from the sale to Partner One to then repay its debt to its lender in full before its next payment came due on July 15, 2023.  *Id.*  Because of the abatement for the June payment, the July payment owed to the creditor would be double the normal amount, a sum Fidelis knew it would not be able to pay without the proceeds from the sale to Partner One.  *Id.* at 23.  Plaintiffs communicated as much to Mr. Charron.  *Id.*

According to Plaintiffs, Defendants' next actions were taken with the explicit goal of causing Fidelis to default on its loan to its lender, resulting in a foreclosure sale where one of Partner One's affiliates could then purchase Fidelis for a fraction of its true value.  *Id.* at 7. Plaintiffs claim that Mr. Charron first requested that Plaintiffs voluntarily terminate the binding agreement in favor of a non-binding IOI.  *Id.*  When Plaintiffs would not agree to that, Partner One's counsel, allegedly at Mr. Charron's direction, sent a letter to Plaintiffs stating, without providing any explanation, that Partner One was terminating the agreement.  *Id.*

Plaintiffs "objected strenuously" to Partner One's attempt to terminate the agreement.  ECF 23, at 8.  While they sought to convince Partner One to honor the binding agreement, Plaintiffs

---

to have a material adverse effect" on Fidelis' "business, properties, assets, or liabilities."  ECF 1-1, at 4–5.

reached back out to other potential buyers, including the buyer who had made an offer in May 2023. *Id.* But less than a day after Plaintiffs sent their objection to Partner One's purported termination letter, Mr. Charron contacted Plaintiffs and revoked the termination notice. *Id.* at 8–9. Mr. Charron claimed he had no involvement with the termination notice as he was on vacation and out of the country at that time. *Id.* He claimed that Partner One was moving "full force" towards the purchase of Fidelis in compliance with terms of the agreement. *Id.*

On July 5, 2023, however, Partner One delivered a second notice of termination to Plaintiffs. ECF 23, at 9. This time, Partner One did provide bases for the termination, specifically:

> (i) that [Fidelis] purportedly engaged in fraud; (ii) that [Fidelis] allegedly obstructed Partner[ ]One's due diligence efforts, thereby failing to satisfy the Agreement's Due Diligence Condition, (iii) that [Fidelis] allegedly failed to satisfy the Agreement's Ordinary Course Condition by failing to operate in the usual course of business since executing the Agreement, and (iv) that [Fidelis] had failed to satisfy the Agreement's MAC Condition since executing the Agreement.

*Id.* at 30.

With the failure of Fidelis' sale to Partner One, Fidelis was unable to make its payment to its lender on July 15, 2023. ECF 23, at 10. The lender issued a notice of default and sold Fidelis' assets in a foreclosure sale on July 31, 2023. *Id.* According to Plaintiffs, an affiliate of Partner One used the confidential information Plaintiffs had provided to Partner One under the NDA to "position itself as the only qualified bidder at the foreclosure sale." ECF 47-2, at 11–12. The Partner One affiliate purchased Fidelis' assets for $17.7 million.[2] *Id.*

### B.   Procedural context

In their original complaint, Plaintiffs asserted four counts: (1) breach of the agreement against Partner One; (2) breach of the NDA against Partner One; (3) breach of the duty to negotiate in good faith against Partner One; and (4) fraud against Mr. Charron. ECF 1, at 34–38. In their

---

[2] This price was equal to the total amount Fidelis owed to its lender. ECF 47-2, at 12.

motion for leave to file a second amended complaint, Plaintiffs seek to specify that all claims are brought by both Plaintiffs;[3] add facts that support the Court's personal jurisdiction over Mr. Charron; and "clarify the allegations supporting [Plaintiffs'] fraud claim and the parties against whom that claim is asserted." ECF 41-1, at 6.  Defendants argue that Plaintiff's motion for leave to amend should be denied as futile and prejudicial.  ECF 50, at 10–12.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure require courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. Pro. 15(a)(2).  While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).  Here, Defendants raise no serious argument regarding bad faith,[4] arguing instead that Plaintiff's motion for leave to amend should be denied on the bases of prejudice and futility.  ECF 50, at 10–12.

A proposed amendment is futile if it is "clearly insufficient or frivolous on its face" or "if the [proposed amended] complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap.*

---

[3] In the initial complaint and first amended complaint, all of the counts appeared to be brought only by Fidelis, as each count began with "The Company [Fidelis] hereby repeats, realleges, and incorporates each of the foregoing allegations as if set forth fully herein" and made no mention of AcquisitionCo. ECF 1, at 34–38; ECF 23, at 37–41.

[4] Defendants make a conclusory claim that "Plaintiffs' litigation conduct likely runs afoul of [the bad faith] standard" in a footnote of their opposition but note that they "have chosen to focus their arguments primarily on futility."  ECF 50, at 10 n.2.

*Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citation omitted).  Under Federal Rule of

Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim

upon which relief can be granted."  In deciding a motion to dismiss, the Court "accept[s] all factual

allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]."

*Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer*

*v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

　　　"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the

claim showing that the [plaintiff] is entitled to relief").  "The complaint must offer 'more than

labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso*

*v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S.

at 555).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient

detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance

of success on the merits."  *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir.

2014).

　　　"Whether an amendment is prejudicial will often be determined by the nature of the

amendment and its timing."  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  When a

"defendant was from the outset made fully aware of the events giving rise to the action, an

allowance of the amendment could not in any way prejudice the preparation of defendant's case"

even if that amendment asserts a new claim or legal theory based on those facts.  *Davis v. Piper*

*Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).  The mere fact that a defendant will have to

continue to litigate a case does not make an amendment to a complaint prejudicial.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (finding that district court abused its discretion in denying leave to amend when "all of the allegations sought to be added in [the] amended complaint derived from . . . matters already contained in the complaint in some form" despite the defendants' argument that "they would have been required to expend a tremendous amount of time and money" to address the amended complaint).

III.   ANALYSIS

Defendants argue that Plaintiff's motion for leave to amend should be denied because the proposed amendment would be futile and because the proposed amendment would prejudice Defendants.  ECF 50, at 10–12.  The Court will address each of these arguments in turn.

A.      **The proposed amendment is not futile.**

Plaintiff's proposed amendment would allow both Plaintiffs to bring each claim and add Partner One as a Defendant in count four.  ECF 47-1, at 6.  It also adds additional detail to the facts of the complaint.  *Id.*  The amended complaint is far from "clearly insufficient or frivolous on its face."  *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750.  To be frivolous is to be "[l]acking a legal basis or legal merit" or "manifestly insufficient as a matter o[f] law."  *Frivolous*, Black's Law Dictionary (11th ed. 2019).  The Court need not undergo a deep analysis of the merits of Plaintiff's amended complaint as a whole to conclude that it is not frivolous.  The proposed amended complaint clearly paints a picture of agreements between Plaintiffs and Defendants; breaches of those agreements; and alleged misconduct and misrepresentations relating to those agreements.  *See* ECF 47-2, at 2–12, 15–36.  The proposed amendment serves to add additional context to the facts of the existing complaint and clarifies who the relevant parties are for each

claim.  *See* ECF 47-1, at 6; ECF 47-2, at 46–90.  Thus, the proposed amended complaint easily clears the frivolity hurdle.

Next, the Court considers whether amendment is futile based upon Defendants' claim that the amended complaint would fail to survive a motion to dismiss.  This is a more difficult analysis.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) ("A proposed amendment is also futile if the claim it presents would not survive a motion to dismiss.").  Much of Defendants' opposition to Plaintiffs' motion reiterates the arguments Defendants made in support of their earlier motion to dismiss.  *See* ECF 50, at 12–31, ECF 41, at 1–36.  While Defendants' motion to dismiss moved for dismissal pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), *see* ECF 40, the futility analysis of a motion for leave to amend focuses exclusively on whether a claim would survive a motion to dismiss brought under Rule 12(b)(6).  *See In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750 ("[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny."); *see also* ECF 50, at 12 (citing *id.*).  As such, the Court will not consider Defendants' argument regarding lack of personal jurisdiction at this time.  *See* ECF 50, at 20–25.  Defendants also argue that Plaintiffs lack standing to bring several claims in this case.  *Id.* at 12–20.  As the question of standing goes to whether the Court has subject matter jurisdiction, the Court will consider this issue only insofar as assessing whether standing is demonstrated on the face of the complaint.

1. Standing is demonstrated on the face of the amended complaint for Fidelis on all claims and for AcquisitionCo on claims one, three, and four.

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit.  *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007).  It is the plaintiff's burden to establish standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To do so, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Id.*  Here, Defendants argue that Plaintiff AcquisitionCo has no standing to assert any

of the claims in the proposed amended complaint and that neither Plaintiff has injury relating to

claims one, two, and three and that they therefore lack standing to bring those claims.[5]  ECF 50,

at 13–20.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a

legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339.  "[A]fter *Spokeo*, a plaintiff may not satisfy

the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete

harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (citing *Spokeo*,

578 U.S. at 341).

> i.     *Plaintiff AcquisitionCo has pled standing for claims one, three, and four.*

Defendants assert that Plaintiff AcquisitionCo has "no factual basis" to assert any of the

claims in the proposed amended complaint.  ECF 50, at 13–17.  This argument centers on

Defendants' assertion that AcquisionCo was not a party to any of the contracts at play and therefore

cannot have any legal injury based upon those contracts.  *Id.*  Defendants also argue that none of

the alleged misrepresentations upon which the fraud claim is based were made to AcquisitionCo,

and so AcquisionCo can have no injury based upon those statements.  *Id.* at 16.

First, the proposed amended complaint pleads that Plaintiff AcquisitionCo was a party to

the binding agreement between Plaintiffs and Partner One, giving AcquisitionCo standing to bring

---

[5] The Court is satisfied that Plaintiffs have adequately pled both causation and redressability, and
Defendants do not challenge these elements. *See* ECF 50, at 13–20 (making no argument regarding
causation or redressability).

claims related to the breach of that agreement (*i.e.*, counts one and three).  The proposed amended complaint asserts that "[t]he Agreement [was] executed by, and [was] expressly binding on" Partner One and both Plaintiffs.  ECF 47-2, at 21.  The agreement attached as an exhibit to the original complaint is signed by a representative of the shareholders, and AcquisitionCo was the sole shareholder of Fidelis at the time.  ECF 1-1, at 7; ECF 51, at 6.  Thus, Plaintiff AcquisitionCo has pled injury sufficient to demonstrate standing for the claims relating to this contract, counts one and three.

Next, despite Defendants' claim that AcquisitionCo was not a recipient of any of the alleged fraudulent misrepresentations upon which count four is based, the proposed amended complaint clearly asserts that at least one of the alleged misrepresentations was made both to "the Company [Fidelis] and the Seller [AcquisitionCo] in an email."  ECF 47-2, at 28.  The proposed amended complaint further asserts that because of the alleged fraudulent misrepresentations, both Plaintiffs stopped their search for an alternative buyer of Fidelis.  *Id.*  Taking all well-pled facts in the complaint as true, AcquisitionCo has pled standing for the fraud claim, count four, in the proposed amended complaint.

Defendants finally assert that AcquisitionCo lacks standing to assert breach of the NDA between Partner One and Fidelis.  ECF 50, at 14–16.  The proposed amended complaint does not claim that AcquisitionCo was a party to the NDA, *see* ECF 47-2, at 15–16, and the NDA attached as an exhibit to the original complaint is signed only by Partner One, ECF 1-15, at 2.  Though Plaintiffs assert that "AcquisitionCo was plainly an intended beneficiary of the NDA," ECF 51, at 17, there are no facts in the proposed amended complaint or the NDA attachment to suggest as much, *see* ECF 47-2, at 15–16; ECF 1-15, at 2.

This Court applies Maryland's choice of law rules, and Maryland courts generally accept choice-of-law clauses in contracts.  *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 605 (D.

11

Md. 2002).  The NDA states that it is to be governed by Massachusetts law.  ECF 1-15, at 2.

"Under Massachusetts law, if the wrong underlying [a] claim results in harm to a plaintiff

shareholder only because the corporate entity has been injured . . . the harm to the shareholder is

indirect and his cause of action is derivative."  *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100,

112 (D. Mass. 2006).  Here, AcquisitionCo is not a party to the NDA, and the harm suffered by

AcquisitionCo from PartnerOne's breach of the NDA is only the harm caused to Fidelis.  As such,

AcquisitionCo can bring only a derivative claim based upon this alleged breach, and it has no

standing to bring the direct claim for breach of the NDA presented in count two in the proposed

amended complaint.  For this reason, Plaintiffs will be denied leave to amend count two to add

AcquisitionCo as a plaintiff on that count.

> ii.       *Plaintiffs have otherwise pled standing to bring their contract claims.*

Defendants assert that Plaintiffs no longer own the contract rights or claims underlying

Plaintiffs' counts one through three.  ECF 50, at 17–18.  Specifically, they claim that Fidelis'

agreement with their lender granted the lender a continuing security interest in all of Fidelis' assets,

including "contract rights" and "General Intangibles," and that such an agreement includes breach

of contract claims under California law, which governs Fidelis' contract with the lender.  *Id.* at 18.

The Court expresses no opinion on the validity of this argument because the Court

considers only the allegations on the face of the complaint for the purposes of this analysis.  The

complaint itself establishes none of the above.  The amended complaint does not provide the details

of the contract between Fidelis and its lender, and there is no reason on the face of the complaint

to believe that Plaintiffs do not still own the rights to the claims they are asserting.  *See* ECF 47-2.

Therefore, the motion for leave to amend is not futile for lack of standing.

2.      The proposed amended complaint states a claim against Defendants.

i.      *Count One: Breach of Agreement Against Defendant Partner One*

"A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).  "Under Maryland law, it is 'generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract.'" *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 675–76 (D. Md. 2013) (quoting *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994)).  Here, the agreement at issue states that it is governed by Delaware law; accordingly, that is the law the Court will apply.  ECF 1-1, at 6.

Under Delaware law, "[i]n order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

Here, Plaintiffs have clearly pled the required elements in the proposed amended complaint.  They have pled the existence of a valid, express agreement, signed by both Plaintiffs and Partner One and supported by consideration.  *See* ECF 47-2, at 7, 21–22.  They have pled that the agreement required Partner One to purchase Fidelis, and that Partner One failed to do so.  *Id.* at 31–32.  They further claim that the reasons provided by Partner One for terminating the agreement were "false accusations" that did not satisfy the termination clause of the agreement. *Id.*  Finally, they have pled that Defendants' failure to perform their obligations under the agreement led to damages to the Plaintiffs.  *Id.* at 35–36.  As such, the proposed amended

complaint pleads a claim for breach of contract under count one, and the amendment to this count is not futile.

> ii.      *Count Two: Breach of Non-Disclosure Agreement (NDA) Against Defendant Partner One*

The non-disclosure agreement states that it shall be governed by Massachusetts law.  ECF 1-15, at 2.  Therefore, applying the same choice of law principles as outlined above, the Court applies the law of Massachusetts for this count.

Under Massachusetts law, "[t]o prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff [did perform or] was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result."  *Bulwer v. Mount Auburn Hosp.*, 46 N.E.3d 24, 39 (Mass. 2016) (citing *Singarella v. Boston*, 173 N.E.2d 290, 291 (Mass. 1961)).

Notwithstanding AcquisitionCo's lack of standing to bring this claim, Fidelis has clearly pled all the required elements in the proposed amended complaint.  It pled the existence of a valid, express contract, signed by Partner One and supported by consideration.  ECF 47-2, at 5, 15.  It pled that Fidelis met its obligations under the NDA by providing access to its confidential data for due diligence purposes.  *Id.* at 9.  Fidelis further pled that Partner One was required to refrain from using Fidelis' confidential information for anything other than anticipated negotiations, to delete all confidential data after the termination of negotiations, and to refrain from hiring or soliciting Fidelis employees and that they failed to do so.  *Id.* at 15, 34–35.  Finally, Fidelis pled damages from this breach.  *Id.* at 35–36.  Count two of Plaintiffs' proposed amended complaint states a claim for breach of contract, and the amendment is not futile on this count with respect to Fidelis.

> iii.    Count Three: Breach of Duty to Negotiate in Good Faith Against
> Defendant Partner One

The breach of duty to negotiate in good faith is brought based on the sale agreement, which is governed by Delaware law, as established above. Plaintiffs specifically allege that Partner One failed to negotiate in good faith in finalizing extra terms after the signing of the contract on June 6, 2023. ECF 47-2, at 39.

In agreements such as the one at issue here, in which "the parties 'agree on certain major terms, but leave other terms open for future negotiation,'" the parties to the contract have an "obligation to negotiate the open issues in good faith." *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 761 (Del. 2022), *reargument denied* (Mar. 22, 2022) (quoting *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 349, 349 n.2 (Del. 2013)). "Under Delaware law, bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." *SIGA Techs, Inc.*, 67 A.3d at 346 (citation omitted).

Here, Plaintiffs have pled more than negligence on behalf of Partner One; they pled knowingly nefarious conduct by Partner One. Plaintiffs allege that Partner One sought to "lure" Plaintiffs away from other interested acquirers by signing a binding contract with no intent to honor it. ECF 47-2, at 7–9. Plaintiffs further allege that Partner One specifically sought to time its second notice of termination such that Fidelis would be forced to default on its payments to its lender, leading to a foreclosure sale that would benefit Partner One. *Id.* at 8–12. At the motion to dismiss stage, this is sufficient to plead a breach of the duty to negotiate in good faith. Therefore, the proposed amended complaint is not futile with respect to this claim.

###### iv.        *Count Four: Fraud Against Both Defendants*

In considering a fraud claim, Maryland courts apply the law of the state where the fraud

occurred. *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 673 (D. Md. 2013).

When the fraud occurred in multiple places, "courts must apply the law of the state where the last

event required to constitute the tort occurred." *Id.* (citing *Williams v. Gyrus ACMI, Inc.*, 790 F.

Supp. 2d 410, 414 (D. Md. 2011)).  However, "[w]here a controversy concerns purely economic

losses allegedly caused by statements made during the course of a contractual relationship between

business[persons], contract law—not tort law—provides the rule of decision by which the case is

to be governed." *Architectural Sys., Inc. v. Gilbane Bldg. Co.*, 779 F. Supp. 820, 821 (D. Md.

1991), *aff'd*, 974 F.2d 1330 (4th Cir. 1992).  As discussed above, contract claims based upon the

sale agreement between Plaintiffs and Partner One are governed by Delaware law.

Here, Defendants assert that the fraud claim should be governed by Delaware law, as the

fraud claim "properly sound[s] in contract."  ECF 50, at 27.  It is unclear from the amended

complaint, though, whether this is correct.  The proposed amended complaint explains that the

conduct that gave rise to the fraud claim occurred after Partner One's initial termination notice and

served to reinstitute the agreement between Plaintiffs and Partner One.  *See id.* at 39–40.  Thus,

without assessing whether Partner One breached the contract when it sent the initial termination

notice, it is unclear whether the law of Maryland or Delaware should apply.  Regardless, the

analysis will be broadly the same, irrespective of whether Maryland or Delaware law applies.

Under both Maryland and Delaware law, to state a claim for fraud, a plaintiff must plead

(1) that the defendant made a false representation to the plaintiff; (2) that the defendant knew that

representation was false (or was at least recklessly indifferent to the truth); (3) that the defendant

made the false representation with the intent to defraud the plaintiff; (4) that the plaintiff rightfully

relied upon the representation; and (5) that the plaintiff suffered damages as a result.  *See Bank of*

*Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 536 (D. Md. 2011); *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

Furthermore, a claim for fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted).

Here, Plaintiffs claim that Mr. Charron (and Partner One, of whom Mr. Charron was an agent) made multiple misrepresentations to Plaintiffs with the intent to "induce Plaintiffs to forgo their post-termination rights and mitigation efforts."  ECF 47-2, at 39.  Specifically, the proposed amended complaint claims that Mr. Charron (1) lied about having no knowledge of the first termination notice being sent to Plaintiffs, claiming that he was on vacation in Greece; and (2) lied about Partner One "moving full force ahead" on the deal.  *Id.* at 39–40.  Plaintiffs further claim that another Partner One employee and agent, Karl Gilbank, lied about seeing no issues with the deal and "marching forward" just two days before Partner One sent Plaintiffs a second termination notice.  *Id.* at 30, 40.  Plaintiffs claim that Defendants "knew that their representations were false when they made them."  *Id.* at 40.  For each of these statements, the proposed amended complaint provides sufficient particularity, stating who made the statements (Mr. Charron and Mr. Gilbank), when the statements were made (June 20, June 22, and July 3, respectively), and the location of the statements (made via email or phone and delivered to the Plaintiffs in Maryland).  *Id.* at 30, 39–40. Indeed, Plaintiffs have attached copies of the text messages and emails containing two of the representations.  *See* ECF 1-9, at 2; ECF 1-10, at 2.  Thus, Plaintiffs have pled the basic elements of fraud.  The inquiry does not end here, however.

17

a.   Economic Loss Rule

Defendants assert that Plaintiffs' fraud claim must fail because of the economic loss rule.

ECF 50, at 25–31.  Under both Maryland and Delaware law, "the economic loss doctrine generally

prohibits recovery in tort for solely economic harm."  *Kuhn Const. Co. v. Ocean & Coastal*

*Consultants, Inc.*, 844 F. Supp. 2d 519, 529 (D. Del. 2012); *see also Dwoskin v. Bank of Am., N.A.*,

850 F. Supp. 2d 557, 569 (D. Md. 2012) (explaining that the economic loss doctrine "generally

bars plaintiffs from recovering in tort for losses that are purely economic").  Thus, a tort claim that

resulted in damages entirely recoverable under a contract clam is generally barred by this rule.  *See*

*Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195–96 (Del. 1992).  Both states, however,

recognize an exception to the economic loss doctrine for fraud relating to the inducement to a

contract.  *Kuhn*, 844 F. Supp. 2d at 529; *Dwoskin*, 850 F. Supp. 2d at 569.

Here, as discussed above, it is unclear without further analysis whether the alleged

fraudulent statements were made in the course of the performance of a contract or whether they

were made to induce Plaintiffs to reenter into an agreement with Partner One.  As such, it would

be inappropriate to find that the economic loss rule bars Plaintiffs' claim at this stage.  Therefore,

the amended complaint is not futile on this claim.

**B.      The proposed amendment is not prejudicial to Defendants.**

Defendants assert that the proposed amendment is prejudicial "because [Defendants]

would be required to expend resources litigating claims over which there is no jurisdiction."  ECF

50, at 12.  In support of this proposition, Defendants cite to *DataCell ehf. v. Visa, Inc.*, Civ. No.

1:14-1658 GBL/TCB, 2015 WL 4624714 (E.D. Va. July 30, 2015).  In *DataCell ehf*, the court

dismissed the plaintiff's complaint without leave to amend for lack of standing, lack of personal

jurisdiction, and failure to state a claim.  2015 WL 4624714, at *11.  In denying leave to amend

the dismissed claims, the court reasoned that the plaintiff could not possibly cure its complaint with an amendment given the deficiencies in standing, and that, as such, "forcing [the] [d]efendants to shoulder the enormous expense of antitrust litigation [was] not warranted." *Id.*

There are several key distinctions between this case and *DataCell ehf*. In *DataCell ehf*, the Court was considering the defendants' motions to dismiss, and so had fully considered the question of personal jurisdiction, 2015 WL 4624714, at *4–6, which is not the case here. The court there also found that Plaintiffs did not have standing on the face of the complaint and failed to plead a claim for relief, *id.* at *6–11, which, again, differs from this case. In that case, given the obvious deficiencies in the complaint, the court reasoned that it would be unfair to force the defendants to bear the costs of what would be extremely expensive anti-trust litigation only for the case to later be dismissed. *Id.* at *11. This is simply not the case here. Plaintiffs' amendment here is not futile, and the Court has not assessed the question of personal jurisdiction. Furthermore, this litigation is not in a field of law that is notoriously expensive, like antitrust. Rather, this case centers around tort and contract law, arguably the most foundational types of claims. There is no basis to find that Plaintiffs' amendment would be prejudicial to Defendants.

## IV.    **CONCLUSION**

For the reasons above, Plaintiff's motion for leave to amend, ECF 47, is **DENIED** with respect to amending count two to add Fidelis AcquisitionCo, LLC, as a plaintiff on that count, and **GRANTED** with respect to every other proposed amendment. Defendants' motion to dismiss, ECF 40, is **DENIED** as moot without prejudice.


Dated: <u>February 20, 2024</u>                    <u>            /s/            </u>
                                    Brendan A. Hurson
                                    United States District Judge


19